IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**TODD PATRICK DAVIS,**

        Plaintiff**,**

v.

**NANCY A. BERRYHILL,
Acting Commissioner of Social Security,**

        Defendant.

**CIVIL ACTION NO.: 5:16-CV-53
(STAMP)**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On April 18, 2016, Plaintiff Todd Patrick Davis ("Plaintiff"), by counsel Jan Dils, Esq., Esq., filed a Complaint in this Court to obtain judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security[1] ("Commissioner" or "Defendant"), pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). (Compl., ECF No. 1). On June 20, 2016, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and the administrative record of the proceedings. (Answer, ECF No. 6; Admin. R., ECF No. 7). On July 20, 2016, and August 11, 2016, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment. (Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 9; Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 11). Following review of the motions by the parties and the administrative record, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

---

[1] After this suit was filed, but before this Order was entered, Nancy A. Berryhill replaced Commissioner Carolyn W. Colvin as the Acting Commissioner of Social Security. Accordingly, pursuant to Rule 25(d), Fed. R. Civ. P., and 42 U.S.C. § 405(g), Nancy A. Berryhill is substituted for Carolyn W. Colvin.

## II. PROCEDURAL HISTORY

On February 13, 2013, Plaintiff protectively filed his first application under Title II of the Social Security Act for a period of disability and disability insurance benefits ("DIB") and under Title XVI of the Social Security Act for Supplemental Security Income ("SSI"), alleging disability that began on January 16, 2009 (R. 266), and December 20, 2010 (R. 277), later amended to December 31, 2010 (R. 297). Plaintiff's earnings record shows that he acquired sufficient quarters of coverage to remain insured through June 30, 2012; therefore, Plaintiff must establish disability on or before this date. (R. 268). This claim was initially denied on May 16, 2013 (R. 78) and denied again upon reconsideration on July 24, 2013 (R. 114). On July 21, 2014, Plaintiff filed a written request for a hearing (R. 258), which was held before United States Administrative Law Judge ("ALJ") Mary Peltzer on August 13, 2014 in Charlottesville, Virginia. (R. 34). Plaintiff, represented by counsel Ambria Adkins (spelled phonetically in the transcript as "Andrea Atkins"), Esq., appeared and testified, as did James Ganoe (spelled phonetically in the transcript as "Ganeau"), an impartial vocational expert. (Id.). On November 6, 2014, the ALJ issued an unfavorable decision to Plaintiff, finding that he was not disabled within the meaning of the Social Security Act. (R. 11). On February 19, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1 - 6).

## III. BACKGROUND

**A. Personal History**

Plaintiff was born on September 28, 1961, and was fifty-one (51) years old at the time he filed his claim. (R. 297). He completed high school and obtained a degree in nursing (R. 45). Plaintiff's prior work experience included work as a licensed practical nurse (LPN). (R. 38). He was married at the time he filed his initial claim (R. 297) and was married at the time of the

administrative hearing. (R. 34). He has a thirteen-year old daughter, a twenty-three year old son, and a twenty four year old daughter, but only his youngest son still lives at home. (R. 42). Plaintiff, his wife, and his son were currently living with Plaintiff's mother in law. Id. Plaintiff alleges disability based on posttraumatic stress disorder (PTSD), degenerative disc disease, sciatica, and a herniated disc. (R. 283). Plaintiff indicated that he "[a]lso suffers from: anxiety, depression, blurry vision, balance problems, difficulty with social functioning, difficulty bending and kneeling, difficulty sleeping, emotional withdrawal and isolation, difficulty grasping objects, difficulty with hand manipulation, memory loss, neuropathy, requires a cone for occasional walking, severe headaches, shortness of breath, and times of being unable to concentrate. (R. 283).

B.  **Relevant History**

In Plaintiff's motion, his claims are narrow and pertain only to the issue of carpal tunnel syndrome. Narrower still, "[t]he issues in this case are primarily legal issues and do not turn on the medical evidence." (ECF No. 10 at 9) Accordingly, for the purposes of this report and recommendation, the facts recited below are limited to that which is relevant to Plaintiff's claims.

C.  **Testimonial Evidence**

At the ALJ hearing held on August 13, 2014, relevant to his carpal tunnel, Plaintiff testified that his hands "get number after just a little bit of time." (R. 60). He cannot use a computer, and cannot write very well. Id. He drops things "all the time," and dropped a cup of coffee that morning. Id. His dominant (right) hand is worse. Id.

**D.     Vocational Evidence**

Also testifying at the hearing was James Ganoe, a vocational expert. Mr. Ganoe characterized Plaintiff's past work as: 1) Phlebotomist, DOT code 079.364-022; semi-skilled, light work with an SVP of three (3); 2) Charge nurse, DOT code 075.137-014; skilled, medium work with an SVP of seven (7); LPN, DOT code 079.374-014; skilled, medium work with a specific vocational preparation (SVP) of 6; 3) Produce Associate and Consultant, DOT 075.137-014; semi-skilled, light work, with a SVP of three (3); 4) Fruit and Vegetable Inspector, DOT code 529.387-018; semi-skilled, medium work with an SVP of three (3); and 5) LNP, DOT code 079.374-014; skilled, medium work with a specific vocational preparation (SVP) of 6.

With regards to Plaintiff's ability to perform other unskilled work, Mr. Ganoe gave the following responses to the ALJ's hypothetical:

> Q    Okay, thank you. All right. Please assume a hypothetical individual that is vocationally situated as is the Claimant and that the hypothetical individual can perform all functions of light work with occasional stairs and ramps; no ladders, ropes or scaffolds; occasional balancing and stooping, kneeling, crouching and crawling; no more than occasional exposure to extreme cold and extreme heat and occasional exposure to vibrations and workplace hazards such as dangerous/moving machinery, but there should be no exposure to unprotected heights.
> The hypothetical individual can perform unskilled work at an SVP: 1 or 2 involving simple/routine tasks and no work with a pace of productivity as dictated by a source outside his control such as conveyor belts. And the hypothetical individual can have no contact with the general public and occasional contact with co-workers and supervisors.
> All right. So all of the past work was either skilled or semi-skilled. So is there any other work that such an individual could perform?
>
> A    The region I'll be using, Your Honor, is the state of West Virginia and Northern Virginia. Under the light exertional level, a mail clerk working in private business, the DOT code is 209.687-026. The SVP: 2, it's an unskilled position, 202,000 nationally, 2,300 regionally.
> Also, a garment sorter, the DOT code is 222.687-014, the SVP: 2, it's an unskilled position, 178,000 nationally, 1,500 regionally. Also under the light exertional level, Your Honor, a price marker, the DOT code is 209.587-034. The SVP: 2, it's an unskilled position, 319,000 nationally, 1,675 regionally. Those are samplings, Your Honor.

4

    Q    And is this testimony consistent with the DOT?
    A    Yes, Your Honor.

(R. 64).

Incorporating the above hypothetical, the ALJ then questioned Mr. Ganoe about Plaintiff's ability to work if he is completely credible as to the severity of his condition:

    Q    All right. For the second hypothetical, please assume that the hypothetical individual is a younger individual, had a sedentary exertional level with the same additional non-exertional limitations from the first hypothetical but, in addition, ambulation requires the use of a cane. Is there any work that such an individual could perform?
    A    At the sedentary level, Your Honor, an addresser/stuffer, the DOT code is 209.587-010, the SVP: 2, it's an unskilled position, 240,000 nationally, 2,000 regionally. Also a general sorter, the DOT code is 734.687-058, the SVP: 2, it's an unskilled position, 25,000 nationally, 900 regionally. Also under the sedentary level, Your Honor, a ticket checker, the DOT code is 219.587-010, the SVP: 2, it's an unskilled position, 100,000 nationally, 1,000 regionally. These are samplings, Your Honor.
    Q    If I added the limitation that the work had to be in a moderate noise environment, would that have any impact on the occupations that you identified?
    A    No, Your Honor.
    Q    And would it have any impact on the sedentary occupations that you also identified for the second hypothetical?
    A    No, Your Honor.

(R. 64-65). Plaintiff's attorney next questioned Mr. Ganoe:

    Q    And, Mr. Gan[oe], regarding the jobs you listed for the first hypothetical at the light level, if the hypothetical person required the use of a cane, would they be able to perform those light jobs?
    A    I think if the individual had to use a cane, if the individual could remain on task when they were using the cane, I think they would be able to.
    Q    And regarding those light jobs, if the individual was limited to only frequent use of the non-dominant hand for handling, manipulating and feeling and occasional use of the dominant hand due to handling, fingering, feeling and use of the cane in that hand as well, would they be able to do those light jobs?
    A    No.
    Q    . . . I said frequent in the left hand, occasional in the dominant hand and the reason I said occasional in the dominant hand is because they would have the limitations, but also the use of the cane in that hand as well as the limitations with fingering, handling and grasping.
    A    No, I don't think they'd be able to.
ATTY: Okay.

(R. 66-67).

## IV. THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (2006). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.
>
> [Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920 (2011).]
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920 (2011). If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

## V. ADMINISTRATIVE LAW JUDGE'S DECISION

Utilizing the five-step sequential evaluation process described above, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since September 28, 2011, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbrosacral spine; left plantar and dorsal calcaneal spurs; obesity; and mental disorders variously diagnosed to include depressive disorder, benzodiazepine dependence, anxiety disorder, posttraumatic stress disorder ("PTSD" herein), personality disorder, somatoform pain disorder, unspecified manic disorder, and mild cognitive disorder (20 CFR 404.1520(c)) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving: occasional climbing stairs or ramps; no climbing ladder, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; occasional concentrated exposure to extreme cold or extreme heat; occasional exposure to vibration and workplace hazards such as dangerous moving machinery but no exposure to unprotected heights; and moderate noise environment. He can perform unskilled work at an SVP 1 or 2 level involving simple, routine tasks and no work where the pace of productivity is outside his control, such as conveyor belts. He can have no contact with the general public and occasional contact with coworkers and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 28, 1961, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 28, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 11-28).

## VI. DISCUSSION

### A. Standard of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)).

However, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment…if the decision is supported by substantial evidence." Hays, 907 F.2d at 1456 (citing Laws, 368 F.2d at 642; Snyder v. Ribicoff, 307 F.2d 518, 529 (4th Cir. 1962)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

**B.     Contention of the Parties**

Plaintiff, in his Motion for Summary Judgment, asserts that the Commissioner's decision "is contrary to the law and is not supported by substantial evidence." (Pl.'s Mot. at 1, ECF No. 9). Specifically, Plaintiff alleges that:

> 1.     The ALJ erred by failing to find Davis' carpal tunnel syndrome to be a severe impairment at step two.
>
> 2.     The ALJ erroneously failed to address Davis's limitations as a result of carpal tunnel syndrome, when she posited her controlling hypothetical question and made her RFC finding.

(Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br.") at 9, ECF No 10). Plaintiff asks the Court to "remand this matter for the correction of errors made below." Id. at 13.

Defendant, in her Motion for Summary Judgment, asserts that the decision is "supported by substantial evidence and should be affirmed as a matter of law." (Def.'s Mot., ECF No. 11). Specifically, Defendant alleges that the ALJ "determined that Plaintiff had several severe impairments, proceeded through the sequential evaluation process, and considered the entire record as a whole, including Plaintiff's reported symptoms, during the formulation of the RFC."

(Def.'s Br. in Supp. Of Def.'s Mot. for Summ. J. ("Def.'s Br.") at [9], ECF No. 12).

Defendant further asserts that "Plaintiff's sole argument on appeal is that the ALJ should have determined that his carpal tunnel syndrome was a severe impairment at step two of the sequential evaluation process and the ALJ's failure to do so constitutes reversible error (Pl.'s Br. at 10-13)." (ECF No. 12 at 6). Defendant then argues that 1) substantial evidence supports the ALJ's finding that Plaintiff's carpal tunnel syndrome was non-severe, and 2) the issue is further nondispositive in this instance as the ALJ proceeded beyond step 2. Id. "Thus, remand based solely on the ALJ's step two finding, where the ALJ proceeds past step two, is inappropriate." Id. at 11.

### C. Analysis of the Administrative Law Judge's Decision

Relevant to carpal tunnel, the ALJ stated that "despite seeking and receiving treatment for [carpal tunnel syndrome], there are no indications from the evidence of record that [Plaintiff's non-severe] impairments, alone or in combination, have had more than a minimal effect on [Plaintiff's] functional capabilities for the twelve-month durational requirements of the regulations." (R. 14). Accordingly, Plaintiff's carpal tunnel syndrome was determined to be non-severe.

#### 1. ALJ's Determination at Step Two that Plaintiff's Carpal Tunnel Syndrome was a Non-Severe Impairment.

If an ALJ finds any severe impairments, an argument that he should have found more is "easily dispose[d] of," because:

> Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. 404.1523, 416.923; *see also id.* §§ 404.1525(e), 416.945(e);

Mauzy v. Astrue, 2010 WL 1369107, No. (N.D.W.Va. Mar. 30, 2010) citing Brescia v. Astrue, 287 Fed.App'x 626 (10th Cir. 2008). Accordingly, it was not error for the ALJ to find Plaintiff's carpal tunnel syndrome non-severe, in and of itself. However, that does not dispose of the entirety of Plaintiff's argument here.

### 2. ALJ's Failure to Include Limitations from Carpal Tunnel Syndrome in her Hypothetical to the VE and in her RFC.

Plaintiff asserts that, "[w]hile it is true that the failure to find a specific impairment severe at step two would ordinarily be harmless if the ALJ had considered the impairment at subsequent steps of the sequential evaluation process, the ALJ in this case quite obviously did not consider any limitations [in] Davis's manipulative abilities at any point in her decision." (ECF No. 10 at 11). In other words, it is not error to find an impairment non-severe as long as the limitations are addressed in the RFC *as long as* "the agency at later steps 'consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity'" consistent with SSR 96-8p. Mauzy, 2010 WL 1369107 at 4.

The ALJ's hypothetical posed to the VE stated:

Please assume a hypothetical individual . . . vocationally situated as is the Claimant [that] can perform all functions of light work with occasional stairs and ramps; no ladders, ropes of scaffolds; occasional balancing and stooping, kneeling, crouching and crawling; no more than occasional exposure to extreme cold and extreme heat and occasional exposure to vibrations and workplace hazards such as dangerous/moving machinery, but there should be no exposure to unprotected heights.

The hypothetical individual can perform unskilled work at an SVP: 1 or 2 involving simple/routine tasks and no work with a pace of productivity as dictated by a source outside his control such as conveyor belts. And the hypothetical individual can have no contact with the general public and occasional contact with co-workers and supervisors.

(R. 64). Afterward, Plaintiff's attorney questioned the VE:

> Q: And regarding those light jobs, if the individual was limited to only frequent use of the non-dominant hand for handling, manipulating and feeling and occasional use of the dominant hand due to handling, fingering, feeling and use of the cane in that hand as well, would they be able to do those light jobs?
> A: No.

Defendant's response does not directly address Plaintiff's second argument – that severe or not, the ALJ was still required to provide a function-by-function analysis and "an explanation for not including upper extremity pushing/pulling and/or manipulative limitations (handling, fingering, feeling) in the RFC." (ECF No. 10 at 11).

The ALJ found in her RFC that:

> [Plaintiff] has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving: occasional climbing of stairs or ramps; no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; occasional concentrated exposure to extreme cold or extreme heat; occasional exposure to vibration and workplace hazards such as dangerous moving machinery, but no exposure to unprotected heights; and moderate noise environment. He can perform unskilled work at an SVP 1 or 2 level involving simple, routine tasks and no work where the pace of productivity is outside his control, such as conveyor belts. He can have no contact with the general public and occasional contact with coworkers and supervisors.

(R. 16).

When assessing a claimant's RFC, Social Security Ruling 96-8p, 61 Fed.Reg. 34,475 requires an ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at 636 (citation omitted). "A discussion of the functional limitations in broad terms followed by an in-depth analysis supporting the ALJ's function findings will satisfy the regulations requirement as well.

See Ashby v. Colvin, 2015 WL 1481625, at *2 (S.D.W. Va. Mar. 31, 2015)." Kimble v. Colvin, 2016 WL 356624, No. 3:15-CV-71 (N.D.W.Va. May 27, 2016).

Though there may have been evidence in the record that supported the ALJ's general finding, as the Defendant argues, none of it was cited to by the ALJ. Nor were the relevant exertional limitations raised by Plaintiff's attorney at the hearing with the VE discussed by the ALJ. While it is the court's role to review the ALJ's decisions for substantial evidence, the court cannot review decisions or rationales the ALJ never articulated.

### 1. RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying the Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income is inconsistent with the law, and not supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment (ECF No. 9) be **GRANTED**, Defendant's Motion for Summary Judgment (ECF No. 11) be **DENIED**, and the decision of the Commissioner be vacated and this case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Choose an item., United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v.

13

Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this July 28, 2017.

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE